IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Albemarle Corporation, Albemarle International Corporation, ) ) ) Plaintiffs, ) ) v. ) ) AstraZeneca UK Ltd, ) ) Defendant. ) ) | Civil Action No.: 5:08-1085-MBS **ORDER** |

I. PROCEDURAL HISTORY

On February 25, 2008, Plaintiffs Albemarle Corporation ("Albemarle") and Albemarle International Corporation ("AIC") filed the instant action in the Court of Common Pleas, First Judicial Circuit, Orangeburg County, South Carolina. Compl. In their complaint, Plaintiffs seek damages against Defendant AstraZeneca UK Ltd. for breach of contract and breach of contract accompanied by a fraudulent act. Id. at 8-12. On March 31, 2008, Defendant removed the instant action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. Notice of Removal 1. On April 7, 2008, Defendant filed a motion to dismiss the instant action pursuant to FED. R. CIV. P. 12(b)(3) and 12(b)(6), and 28 U.S.C. § 1406(a). Mot. to Dismiss 1. Defendant contends the contract between the parties contains a forum selection clause mandating jurisdiction in England. Id. On April 7, 2008, Plaintiffs filed a response in opposition to Defendant's motion to dismiss. Pls.' Memo. of Law in Opp'n to Def.'s Mot. to Dismiss. Defendant filed a reply on May 5, 2008. Reply Br. in Opp'n to Pls.' Memo. in Opp'n to AZUK's Mot. to Dismiss.

On May 16, 2008, Plaintiffs filed a motion for anti-suit injunction, asking this court for an order to enjoin Defendant from filing a lawsuit similar to the instant matter with the courts of

England. Mot. for Anti-Suit Inj. 1. Defendant filed a response to Plaintiffs' motion on June 2, 2008. AstraZeneca's Resp. to Pls.' Mot. for Anti-Suit Inj. Plaintiffs filed a reply on June 6, 2008. Pls.' Reply to Def.'s Memo. in Opp'n to Mot. for Anti-Suit Inj. On June 10, 2008, this court held a hearing on the motion to dismiss and the motion for anti-suit injunction. Plaintiffs filed a status report on June 25, 2008 in which they claimed that negotiations were ongoing and both parties requested this court abstain from issuing a ruling on both pending motions for two weeks to allow negotiations to continue. Entry 19. However, on October 21, 2008, Defendant sent this court a letter indicating that settlement negotiations had not been fruitful.

On January 15, 2009, Plaintiffs filed a supplemental brief in support of their motion for anti-suit injunction and in opposition to Defendant's motion to dismiss, claiming that a new chemical supply contract had been entered into by both parties that affected both pending motions. Supplemental Br. in Opp'n to Def.'s Mot. to Dismiss and in Supp. of Pls.' Mot. for Anti-Suit Inj. Defendant filed a response on February 2, 2009. AstraZeneca UK Ltd.'s Resp. to Pls.' Supplemental Br. in Opp'n to Def.'s Mot. to Dismiss and in Supp. of Pls.' Mot. for Anti-Suit Inj. In support of its motion, Defendant filed the affidavit of Marc Jones, Vice President of Global External Sourcing, Operations, on February 4, 2009. Notice of Filing Aff. of Marc Jones; Aff. of Marc Jones. On February 10, 2009, Plaintiffs filed a reply. Pls.' Rebuttal to AstraZeneca UK, Ltd's Responsive Br. Plaintiffs filed a motion seeking to convert Defendant's motion to dismiss into a motion for summary judgment or strike the affidavit of Marc Jones on February 11, 2009. Mot. to Convert, or Alternatively, Mot. to Strike the Aff. of Marc Jones. Defendant filed a response on March 2, 2009. AstraZeneca UK Ltd's Resp. to Pls.' Mot. to Convert or Strike the Aff. of Marc Jones. Plaintiffs

filed a reply on March 12, 2009. Pls.' Reply to Def.'s Memo. in Opp'n to Mot. to Convert, or Alternatively, Mot. to Strike the Aff. Of Marc Jones.

## II. FACTS

The parties' April 2005 contract (identified as Contract No. DIP/05 or "Contract") was for the manufacture and supply of Di Iso Propyl Phenol ("DIP") by Plaintiff Albemarle to Defendant. Plaintiffs allege DIP was manufactured solely at its Orangeburg, South Carolina facilities. Compl. ¶ 14. Defendant used DIP in its production and sale of the drug Diprivan. Id. at ¶ 16. Paragraph 14 of the Conditions of the Contract, incorporated into Contract by Clause K, states that "[t]his contract shall be subject to English law and the jurisdiction of the English High Court." Compl., Ex. A 6, 8. While not an original party to the Contract, Plaintiff AIC formally became a party per an amendment executed February 7, 2007. Compl. at ¶ 12.

Plaintiffs allege that Defendant breached the Contract by not conforming to Clause H. This provision allows Plaintiff Albemarle the right of first refusal to supply Propofol to Defendant, under mutually acceptable conditions, in the event that Defendant decided to reformulate Diprivan to use Propofol instead of DIP. Id. at ¶ 19. Plaintiff Albemarle claims that in June 2006, it was informed by Defendant that Defendant intended to switch from DIP to Propofol. Id. at ¶ 20. Plaintiff Albemarle and Defendant allegedly began to discuss possible terms and conditions for a new contract by which Plaintiff Albemarle would sell Propofol to Defendant. Id. at ¶ 22. No agreement for a new contract was reached at that time. Plaintiffs allege that Defendant never provided Plaintiff Albemarle with the ultimate offer for Propofol that Defendant decided to accept, which Plaintiffs claim was a denial of its right of first refusal. Id. at ¶¶ 22, 25. Plaintiffs allege that Defendant wrote Plaintiff Albemarle a letter on November 16, 2007, claiming the parties' preliminary discussions

extinguished Plaintiff Albemarle's right of first refusal. Id. at ¶ 29. Following this letter, there was a series of communications between the parties regarding what Plaintiff Albemarle considered to be Defendant's failure to comply with Clause H. Id. at ¶¶ 30-31. In January 2008, Defendant provided Plaintiff Albemarle with the complete Propofol offer of an alternate supplier. Id. at ¶ ¶ 32-33. Plaintiff Albemarle claims it exercised its right of first refusal and accepted this offer, which Defendant subsequently repudiated. Id. at ¶ ¶ 34-35.

### III. DISCUSSION

A.    Motion to Dismiss

Defendant claims that dismissal of Plaintiffs' action is proper pursuant to FED. R. CIV. P. 12(b)(3). In the alternative, Defendant seeks dismissal pursuant to *forum non conveniens*, pursuant to 28 U.S.C. § 1406(a).[1]

i.    Improper Venue

FED. R. CIV. P. 12(b)(3) allows a party to assert the defense of "improper venue" by motion. The Supreme Court has established that as a general rule, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Forum selection clauses may be unreasonable if "(1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of

---

[1]    While Defendant further claims that dismissal is proper under FED. R. CIV. P. 12(b)(6), see Mot. to Dismiss 1, the entirety of his motion focuses solely on FED. R. CIV. P. 12(b)(3) or 28 U.S.C. § 1406(a). The court notes that a motion to dismiss based on a forum-selection clause should be treated under FED. R. CIV. P. 12(b)(3) as a motion to dismiss on the basis of improper venue. See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548-549 (4th Cir. 2006).

4

the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991) and M/S Bremen, 407 U.S. at 12-13, 15, 18).

Before a court can assess whether a forum selection clause is "unreasonable," it must determine whether the clause is selective (*i.e.* mandatory) or permissive (*i.e.* nonmandatory). As the Court of Appeals for the Fourth Circuit has explained, "[a] general maxim in interpreting forum-selection clauses is that 'an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.'" IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007) (quoting John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc., 22 F.3d 51, 53 (2d Cir. 1994)).

The use of the word "shall" does not automatically render the forum selection clause mandatory. See IntraComm, Inc., 492 F.3d at 290 (finding that a forum selection clause which states that "either party shall be free to pursue its rights . . . in a court of competent jurisdiction in Fairfax County, Virginia" is permissive). In contrast, when mandatory venue language is used, the forum selection clause is to be enforced. See Sterling Forest Assocs., Ltd. v. Barnett-Range Corp., 840 F.2d 249, 252 (4th Cir. 1988) (enforcing clause which stated that "venue shall be in California"). As this court has previously explained, "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." Red Light, LLC v. Am. Traffic Solutions, 2006 WL 463569, *2 (D.S.C.

5

February 23, 2006) (citing Guy F. Atkinson Const. Co. v. Ohio Municipal Elec. Generation Agency Joint Venture, 943 F. Supp. 626 (S.D. W. Va.1996)).

Thus, while the crux of Defendant's motion to dismiss is centered on the question of reasonability, see Mot. to Dismiss 2-7, the court must determine whether the clause is mandatory before it can address whether the forum selection clause of the Contract is "unreasonable." If the clause is not mandatory, then the question of reasonableness is moot. The forum selection clause in the Contract simply states that "[t]his contract shall be subject to English law and the jurisdiction of the English High Court." Mot. to Dismiss 1. As the Fourth Circuit noted in IntraComm, Inc., the word "shall" alone is not enough to create a mandatory forum selection clause. Absent further language making England the mandatory venue, this court agrees with Plaintiffs that the forum selection clause is not mandatory.

Defendant challenges this view, arguing that this court's previous ruling in Red Light, LLC dictates a finding that the forum selection clause is selective. Br. in Opp'n to Pls.' Memo. in Opp'n to AZUK's Mot. to Dismiss 2. This argument in unpersuasive. In Red Light, LLC, this court found that a forum selection clause was permissive based on the similarities between it and the forum selection clause in John Boutari & Son, Wines & Spirits, S.A. Red Light, LLC, 2006 WL 463569 at *3. The clause in the instant matter is not distinguishable in any material respect from the clauses at issue in Red Light, LLC and John Boutari & Son. Defendant's contention is without merit.

Defendant also cites to Atlantic Tele-Network, Inc. v. Inter-American Dev. Bank, 251 F. Supp. 2d 126 (D.D.C. 2003), for the proposition that a forum selection clause using the word "shall" and citing specific locations for adjudication is mandatory. Br. in Opp'n to Pls.' Memo. in Opp'n to AZUK's Mot. to Dismiss 2. However, the specific language in that case states that "[f]or the

6

purpose of resolving disputes regarding this Agreement, or arising therefrom . . . shall submit themselves to the jurisdiction of the courts of Guyana." Atlantic Tele-Network, Inc., 251 F. Supp. 2d at 135.  The forum selection clause in the instant matter does not state that the parties "shall submit themselves," but rather, merely confers jurisdiction on the English High Court without making it the exclusive place of jurisdiction.

Defendant cites to Cable-La, Inc. v. Williams Comm'ns, Inc., 104 F. Supp. 2d 569 (M.D.N.C. 1999).  Br. in Opp'n to Pls.' Memo. in Opp'n to AZUK's Mot. to Dismiss 2.  However, in that case the party contesting the validity of the forum selection clause did not contend that the clause was not mandatory but rather relied on the contention that forum selection clauses contravened strong public policy interests of North Carolina.  Cable-La, Inc., 104 F. Supp. 2d at 575-76.  Furthermore, the language of the forum selection clause in Cable-La, Inc., similar to that of Atlantic Tele-Network, Inc., provides that any lawsuit "shall be brought" in the courts of Oklahoma.  Id. at 572.  Thus, the language of the forum selection clause in Cable-La, Inc., unlike the language of the forum selection clause at issue in this case, mandates that the parties bring an action in a specific jurisdiction.

Finally, Defendant relies upon Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318 (10th Cir. 1997), to establish that a forum selection clause containing the word "shall" is mandatory.  Br. in Opp'n to Pls.' Memo. in Opp'n to AZUK's Mot. to Dismiss 2-3.  However, Excell, Inc. is contrary to the Fourth Circuit's determination in IntraComm, Inc., that forum selection clauses containing the word "shall" are not *per se* mandatory.  Furthermore, Defendant's reliance to Excell, Inc. fails on the merits.  The wording of the forum selection clause in that case states,

"jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado." Excell, Inc., 106 F.3d at 321. Such language is clearly mandatory, in contrast to the language in the instant matter.[2]

ii.      *Forum non conveniens*

Title 28, United States Code § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The doctrine of *forum non conveniens* has "continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigation convenience best." Fidelity Bank PLC v. Northern Fox Shipping N.V., 242 F. App'x 84,

---

[2]     On June 28, 2008, Plaintiff Albemarle and Defendant executed a new sales agreement for DIP ("New Contract"). Supplemental Br. in Opp'n to Def.'s Mot. to Dismiss and in Supp. of Pls.' Mot. for Anti-Suit Inj., Ex. A. Section J of the General Conditions of Sale in the New Contract states that "This Agreement constitutes the entire contract of sale and purchase of the product(s) named herein. All prior agreements between the parties relating to this product ["DIP"], if any are currently in force or effect, shall have no further force or effect, except to the extent relied upon by Seller (or any subsidiary of Seller) as forming the basis of relief sought by Seller (or an subsidiary of Seller) against buyer in current or future litigation between Buyer and Seller (or a subsidiary of Seller)." Id. at 6. The New Contract also stated, in Section K of the General Conditions of Sale, that "[t]his Agreement shall be interpreted in accordance with the laws of the [sic] South Carolina, without giving effect to provisions as to the conflicts of laws. Any disputes relating in anyway to this agreement will be resolved in the state or federal court located in (or if none is located in, then the nearest to) Orangeburg, South Carolina, which court will have exclusive jurisdiction and venue over such dispute." Id. This forum selection clause in the New Contract is far more exacting than that found in the Contract. Plaintiffs claim that the forum selection clause in the Contract is rendered moot by the forum selection clause in the New Contract, which clearly delineates South Carolina as the venue for any legal action arising from the New Contract. See id. However, as this court has determine that the forum selection clause of the Contract is permissive, it need not determine whether the New Contract supersedes the Contract.

8

90 (4th Cir. 2007) (quoting Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430, (2007)). The determination of whether dismissal based on *forum non conveniens* is appropriate requires a two-step analysis. First, it must be determined "whether an alternative forum is available." In re Compania Naviera Joanna S.A., 531 F. Supp. 2d 680, 684 (D.S.C. 2007) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981)). Second, if an alternative forum is available, "the court must apply various factors to determine whether the private litigants' interests and the public interest require dismissal." Id. (citing Piper Aircraft Co., 454 U.S. at 257-61).

For an alternative forum to exist, the forum must be available and adequate. See Fidelity Bank PLC, 242 F. App'x at 90. The availability requirement is generally "satisfied when the defendant is 'amenable to process' in the [foreign] jurisdiction." Id. (quoting Piper Aircraft, 454 U.S. at 254 n.22). A foreign forum is adequate when "'(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'" Id. (citing Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991) (internal citations omitted)). It is the moving party's burden to demonstrate that an alternative forum exists. Id. (citing Kontoulas v. A.H. Robins Co., Inc., 745 F.2d 312, 316 (4th Cir. 1984)).

Provided that an alternative forum does exist, it must be determined whether public and private interests necessitate dismissal in the current forum. The Fourth Circuit has explained that "[t]he private interest factors focus on the litigants and include the consideration of the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious

and inexpensive.'" Id. at 90 n.* (quoting Piper Aircraft, 454 U.S. at 241 n.6).  In contrast, "[t]he public interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'"  Id. (quoting Piper Aircraft, 454 U.S. at 241 n.6).  As is the case with determining whether an alternative forum exists, the movant bears the burden at this step of the analysis.  Id. at 91.  Specifically, the movant must "provide enough information to enable the District Court to balance the parties' interests." Id. (quoting Piper Aircraft, 454 U.S. at 258).

In the matter at bar, Plaintiffs acknowledge that the first step of the *forum non conveniens* analysis is satisfied.  Pls.' Memo. of Law in Opp'n to Def.'s Mot. to Dismiss 15 n.10.  England serves both as an available and adequate alternative forum.  Id.  Thus, this court must determine whether Defendant carries its burden with regards to the second step of the analysis.  Plaintiff Albemarle is headquartered in the United States, while Defendant is located in England.  Therefore, with regards to the "private factors," neither England nor South Carolina has a distinct forum advantage.  While the costs associated with a trial might decrease for Defendant if the action is adjudicated in England, such costs would likely increase for Plaintiffs.  Further, as Plaintiffs correctly indicate, much of the evidence in the case is located in the United States, making judicial action in England far costlier than it would be if the action remained in this jurisdiction.  See id. 17-19.  With regards to "public factors," Defendant has failed to provide any evidence that transferring this action would accrue any public benefit.  In fact, quite the opposite is true as there exists a local

interest in having this controversy settled in South Carolina as the controversy involves a local manufacturer.

This court finds that as Defendant has failed to carry its burden the motion to dismiss on *forum non conveniens* grounds is denied.

B.      Motion for Anti-Suit Injunction

Plaintiffs have moved this court to enjoin Defendant from filing a competing lawsuit in England. Mot. for Anti-Suit Inj. 1. Specifically, Plaintiffs ask for Defendant 1) to be enjoined from prosecuting any action in England related to the Contract forming the subject of the complaint in the instant matter; 2) to be required to advise this court in writing that all persons and entities related to Defendant are enjoined from prosecuting an action in England on this matter; and 3) to file any compulsory counterclaims with this court. Id. at 1-2. Plaintiffs base their argument on FED. R. CIV. P. 13(a), arguing that Defendant must state any claim it may have, arising out of the same transaction or occurrence as the instant matter, in federal court as a counterclaim. Memo. of Law Supporting Mot. for Anti-Suit Inj. 5-6.

The standard governing the issuance of an anti-suit injunction enjoining a party from filing suit in a foreign jurisdiction is not well established. Congress has passed the Anti-Injunction Act, but this provision only states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. In the few instances where the Supreme Court has discussed anti-suit injunctions, its analysis has focused on whether a state court can issue such an injunction to prevent parties from filing similar actions in other states, see Baker by Thomas v. General Motors Corp., 522 U.S. 222, 236 n. 9 (1998), or

11

whether a federal court acted appropriately in issuing an anti-suit injunction in class actions cases, see Amchem Products, Inc. v. Windsor, 521 U.S. 591, 611 (1997). The Fourth Circuit has addressed anti-suit injunctions on limited occassions. See Spencer v. Frontier Ins. Co., 290 F. App'x 571 (4th Cir. 2008) (describing the existence of an anti-suit injunction in the factual pattern) (unpublished); Denny's, Inc. v. Cake, 364 F. 3d 521 (4th Cir. 2004) (discussing the timing of state lawsuits vis-a-vis anti-suit injunctions).

The most thorough examination of the issue in this jurisdiction is set forth in Umbro Int'l Inc. v. Japan Professional Football League, 1997 WL 33378853 (D.S.C. October 2, 1997). In that case, the court recognized that the Fifth, Seventh, and Ninth Circuits have adopted an approach where anti-suit injunctions are proper if parties and issues are duplicated. Id. at *2. The Fifth Circuit has held foreign litigation can be enjoined when "1) a policy of the forum issuing the injunction would be frustrated; 2) the litigation will be vexatious or oppressive; 3) the issuing courts in rem or quasi in rem jurisdiction is threatened; or 4) other equitable considerations would be prejudiced." Id. (citing In re Unterweser Reederrei Gmbh, 428 F.2d 888, 890 (5th Cir. 1970), rev'd on other grounds, 407 U.S. 1 (1972)). As the Umbro court noted, the Fifth Circuit found that a district court's finding that "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship' and 'tend to frustrate and delay the speedy and efficient determination of the cause,'" was not an abuse of discretion. Id. (quoting In re Unterweser Reederrei Gmbh, 428 F.2d at 896).

Conversely, the Umbro court recognized that the First, Second, Sixth, and D.C. Circuits have crafted their rules for anti-suit injunctions with an eye toward international comity. Id. at *3. "Generally, these Circuit Courts hold that when the courts of two sovereigns possess concurrent *in*

*personam* jurisdiction, those courts should proceed simultaneously." Id. at *3 (citing China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987); Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 926-27 (D.C. Cir. 1984)). However, foreign anti-suit injunctions are said to be proper when "foreign action threatens 1) the jurisdiction of the district court; and 2) important public policies of the forum." Id. (citing Gau Shan Co., Ltd, v. Bankers Trust Co., 956 F.2d 1349, 1355 (6th Cir.1992); China Trade, 837 F.2d at 36; Laker Airways, 731 F.2d at 927; Canadian Filters (Harwich) Ltd, v. Lear-Siegler, Inc., 412 F.2d 577 (1st Cir.1979)).

In the matter at bar, both parties agree on the lack of controlling Fourth Circuit precedent and the existence of a circuit split on the issue of foreign anti-suit injunctions. See Memo. of Law Supporting Mot. for Anti-Suit Inj. 7, 11; AstraZeneca's Resp. to Pls.' Mot. for Anti-Suit Inj. 3-4. Using either the approach embraced by the Fifth, Seventh, and Ninth Circuits, or the approach adopted by the First, Second, Sixth, and D.C. Circuits, this court finds that Plaintiffs are entitled to a foreign anti-suit injunction.

Using the approach taken by the Fifth, Seventh, and Ninth Circuits, any case Defendant were to bring against Plaintiffs in England would involve duplicate parties and issues. Plaintiffs correctly indicate that the only entities which could be brought before an English court are themselves and Defendant, because these are the only two parties to the Contract. Memo. of Law Supporting Mot. for Anti-Suit Inj. 8. Furthermore, the only issue that could arise in an English case is an issue stemming from the Contract and its breach, the same issue facing this court. Id. Many of the specific factors elucidated by the Fifth Circuit in In re Unterweser Reederrei Gmbh would also be effected by Defendant bringing suit in England, specifically a need to protect the policy of the forum and the need to prevent prejudice of other equitable considerations. District courts in this

jurisdiction have long recognized the importance of judicial efficiency. See Pearson v. STBG Parole and Probation and Pardon Service, 2009 WL 607370, *4 (D.S.C. Mar. 6, 2009) (citing the "important interests of judicial efficiency and economy"); Martin v. Brackett, 2008 WL 2434110, *2 (D.S.C. June 12, 2008) (denying a motion to stay "in light of the need for judicial efficiency). Adjudicating the instant matter in this court while an identical claim is being heard in an English court would make a mockery of the policy of judicial efficiency. In addition, if this court were to issue a ruling inconsistent with one issued by the English court, Plaintiffs would be placed in an impossible position of attempting to alter its behavior in an attempt to satisfy conflicting rulings.

The case for a foreign anti-suit injunction under the approach adopted by the First, Second, Sixth, and D.C. Circuits is a more complex matter as the hallmark of such analysis is the question of comity. See Quaak v. KPMG-B, 361 F.3d 11, 18 (1st Cir. 2004). However, as previously noted, such injunctions are proper if a foreign action would threaten "the jurisdiction of the district court" and threaten "important public policies of the forum." Umbro Int'l Inc., 1997 WL 33378853 at *3. The second piece of this analysis has previously been addressed by the explanation that even under the approach of the Fifth, Seventh, and Ninth Circuits, the court's policy interest in judicial efficiency would be threatened by simultaneous suits in this court and in England. Thus, this court must decide whether this court's jurisdiction would be threatened by an English court taking action on a similar claim.

As the First Circuit noted in Quaak, "a court has a right--indeed, a duty--to preserve its ability to do justice between the parties in cases that are legitimately before it." 361 F.3d at 20. As Plaintiffs correctly indicate, this court has properly exercised both personal jurisdiction over the parties in this dispute, and subject matter jurisdiction over the contractual issue at the heart of the

instant matter. Memo. of Law Supporting Mot. for Anti-Suit Inj. 13. An English court adjudicating this matter could reach a decision prior to this court rendering a decision. In such a case, this court would be left with two options. First, it could refuse to act, letting the English court's ruling govern. Such a decision would forfeit exactly what Quaak noted this court should strive to protect. See also Laker Airways, 731 F.2d at 930 ("an injunction may be necessary to avoid the possibility of losing validly invoked jurisdiction"). Second, it could act subsequent to the English court. However, as previously explained, such a ruling that resulted in an opposite finding from that of the English court would place Plaintiffs, and possibly both parties, in an impossible position of trying to act in a singular manner to abide by conflicting rulings.

Therefore, under either the approach advanced by the Fifth, Seventh, and Ninth Circuits, or the approach advanced by the First, Second, Sixth, and D.C. Circuits, Plaintiffs motion for anti-suit injunction should be granted.

## IV. CONCLUSION

Defendant's motion to dismiss (Entry 6) is **denied**. Plaintiffs' motion for anti-suit injunction (Entry 13) is **granted**. Plaintiffs' motion to convert or in the alternative strike the affidavit of Marc Jones (Entry 36) is **denied** as it has been rendered moot.

**IT IS SO ORDERED**.

s/Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina
March 31, 2009